# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Thomas Foglia IN THE NAME OF THE UNITED STATES GOVERNMENT PURSUANT TO THE FALSE CLAIMS ACT, 31 U.S.C. SECTION 3730; the State of New Jersey pursuant to the New Jersey False Claims Act, Title 2A of the New Jersey Statutes and amending 3 P.L.1968, c.413; the State of Texas pursuant to TEX. HUM. RES. CODE Sec. 36.001-36.117 and individually pursuant to The New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq | : |
| | : |
| **DOCKET NO: 09-1552** | |
| Relator/Plaintiff, | : |
| vs. | : |
| Renal Ventures Management, LLC. 1626 Cole Boulevard Suite #100 Lakewood, Colorado 804 | : |
| | : |
| **FIRST AMENDED QUI TAM COMPLAINT REDACTED** | |
| Defendant. | : |

Plaintiff/Relator hereby files this First Amended Complaint (REDACTED[1]) under Seal pursuant to Section 31 U.S.C. Title 3729 and 3730, under which a civil action may be brought for violations of 31 U.S.C. Section 3729 regarding false claims as defined therein by a person for himself and by the United States Government, the State of New Jersey pursuant to the New

---

[1] The body of the Complaint filed Under Seal contains sensitive health information of non party individuals who were patients of Defendant. The United States has notified Plaintiff of it's election to decline intervention and the Court intends on issuing an Unsealing Order. Such sensitive information is being redacted from this Amended Complaint until an appropriate Protective Order can be entered after service on the Defendant.

Jersey False Claims Act, Title 2A of the New Jersey Statutes and amending 3 P.L.1968, c.413 and the State of Texas pursuant to TEX. HUM. RES. CODE Sec. 36.001-36.117 and an ancillary individual claim pursuant to the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

### I. The Parties

1.     Relator is Thomas G. Foglia ("Relator" or "Foglia") who resides at 333 Hillcrest Avenue, Hilltop, New Jersey. He is a registered nurse who was employed with Defendant Renal Ventures Management, LLC commencing on March 13, 2007 and was terminated on or about November 7, 2008.

2.     Defendant Renal Ventures Management, LLC ("Defendant" or "RVM") is, upon information and belief, a limited liability company with its office located in Colorado and is a dialysis care services company that specializes in providing all forms of dialysis care for patients with end-stage renal disease (ESRD).   ESRD is the state of advanced renal impairment that is irreversible and fatal without treatment. RVM services include in-hospital and outpatient hemodialysis, peritoneal dialysis, home dialysis and a transplant referral program.  It operates numerous dialysis centers in New Jersey, Texas, Iowa, Arkansas, Pennsylvania including the center in where Relator was employed known as the RENAL CENTER OF SEWELL, LLC Timberline Shopping Center 660 Woodbury-Glassboro Road, Sewell, New Jersey 08080.

3.     RVM participates in joint venture arrangements and agreements with various nephrologists to build and manage new dialysis centers. RVM is responsible for all management, and training, including the acquisition of all equipment, technology, supplies, employee benefits and administrative services, including all back-office operations, which include all billing and collection functions. The facilities in which RVM participates in such joint ventures and provides such services include the following:

**Pennsylvania Facility**

RENAL CENTER OF PHILADELPHIA, LLC
5630 Chestnut Street, 2nd Floor
Philadelphia, PA 19139-3232

**West Virginia Facility**

RENAL CENTER OF MOOREFIELD, LLC
8 Lee Street, 2nd Floor
Moorefield, WV 26836-1068

**Iowa Facility**

BUENA VISTA RENAL CENTER at
the RENAL CENTER OF STORM LAKE, LLC
1426 Lake Avenue
Storm Lake, IA 50588-1910

**Arkansas Facility**

RENAL CENTER OF MOUNTAIN HOME, LLC
200 E. 8th Street, #101
Mountain Home, AR 72653

**Texas Facilities**

AMARILLO KIDNEY SPECIALISTS, LLC
8604 S. Coulter Street
Amarillo, TX 79121

RENAL CENTER OF CARROLLTON, LP, LLLP
4240 International Parkway, #158
Carrollton, TX 75007

RENAL CENTER OF NORTH DENTON, LLLP
4309 Mesa Drive
Denton, TX 76207

TEXAS RENAL VENTURES, LP, LLLP
1049 Clifton Street
Fort Worth, TX 76107-262

RENAL CENTER OF FRISCO
10850 Frisco Street
Frisco, TX 75034

RENAL CENTER OF LEWISVILLE, LLC
1600 Waters Ridge Drive, Suite B
Lewisville, TX 75057

RENAL CENTER OF THE HILLS
6331 Grapevine Highway
Suite 200
North Richland Hills, TX 76180-1590

RENAL CENTER OF MIDLAND-ODESSA,
LP, LLLP
4241 Tanglewood, Suite 104
Odessa, TX 79762

RENAL CENTER OF TYLER,
LP, LLLP
510 SW Loop 323, #580
Tyler, TX 75702

RENAL CENTER OF WATERTON
2895 Shiloh Road
Tyler, TX, 75703-2936

**New Jersey Facilities**

BAYONNE RENAL CENTER, LLC
P.O. Box 169
434-436 Broadway
Bayonne, NJ 07002-3682

RENAL CENTER OF BRICK, LLC
150 Brick Boulevard
Brick, NJ 08723-7125

RENAL CENTER OF NEWTON, LLC
7 East Clinton Street
Newton, NJ 07860

-3-

RENAL CENTER OF PASSAIC, LLC
10 Clifton Boulevard
Clifton, NJ 07011

OUR LADY OF LOURDES DIALYSIS

SERVICES  at the RENAL CENTER

OF SEWELL, LLC
Timberline Shopping Center
660 Woodbury-Glassboro Road, #29
Sewell, NJ 08080-3732

RENAL CENTER OF SOMERVILLE, LLC
1 Route 206 North
Somerville, NJ 08876

RENAL CENTER OF TRENTON, LLC
601 Hamilton Avenue
Trenton, NJ 08629

RENAL CENTER OF WESTWOOD, LLC
363 Old Hook Road
Westwood, NJ 07675

RENAL CENTERS OF NORTH JERSEY,
LLC
6A Frassetto Way
Lincoln Park, NJ 07035

## *II. Jurisdiction*

4.      This Court has jurisdiction pursuant to Section 31 U.S.C. Title 3729 and 3730 and

pursuant to Title 28 Section 1331 in that this is a civil action arising under the laws of the United

States. The Court has ancillary jurisdiction of the individual claim by Plaintiff pursuant to the

New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

### *III. Venue*

5.     The venue is proper in this District by a virtue of Title 28 Section 1391(b) in that the Defendant has a principal place of business is in the District.

### *IV.  Background*

### a. *Substandard Care In Violation Of New Jersey State Regulations*

6.     The Defendant operates renal dialysis centers for outpatient care. The New Jersey Administrative Code ("NJAC") Title 8 Chapter 43A provides standards for the licensure and operation of ambulatory care facilities which include the dialysis units within ambulatory care facilities providing renal dialysis services such as that provided by the defendant in Sewell, New Jersey known as the Renal Center of Sewell, New Jersey where Relator was employed.

Title 8:43A-24.7(C) of the NJAC states as follows:

> At least one registered nurse shall be on duty for the first nine patients receiving dialysis services on the premises and an additional registered nurse shall be on duty for each additional nine patients or any portion thereof.

7.     Subparagraph d of Title 8:43A-24.7 states that

> . . . . . . at least one registered nurse, licensed practical nurse or trained patient care technician shall be on duty for every three patients receiving dialysis services.

8.     Relator observed that on the following dates that Defendant, which was a recurring and routine occurrence, did not provide enough registered nurses to patient ratio per the aforesaid regulations or otherwise violated State regulations as follows:

- On 90-95% of all days of operation, between the 2nd and 3rd patient shifts, Defendant used illegal staff to patient ratio. Renal Center of Sewell routinely operates with 22-23 patients on the floor. The unit is mandated and licensed to operate with a maximum of 18 patients at any time.

-5-

- March 12, 2008 insufficient registered nurse (RN) to patient ratio.

- March 26, 2008 insufficient RN to patient ratio.

- April 14, 2008, there was only 1 RN[2] to 16 patients.

- May 26, 2008 clinical coordinator out this day causing insufficient staff to patient ratio.

- May 30, 2008 the reverse osmosis water system was not checked per state regulations. The clinical coordinator gave a day off to the only qualified person who was able to check for chlorine/chloramines. This is required to be done before each shift of patients are permitted to be dialyzed. Relator believes the water documentation was later forged.

- July 21, 2008 insufficient staff to patient ratio from 05:00 to 06:00 hours 5 staff to 16 patients.

- August 1, 2008 insufficient staff to patient ratio; no charge nurse.

- August 18, 2008 insufficient staff to patient ratio.

- August 20, 2008 insufficient RN to patient ratio.

- August 22, 2008 patient dialyzed without being medically cleared by a doctor. Company billed for this treatment, medicare improperly billed. Patient: Inkster.

- August 25, 2008 patient dialyzed entire treatment with unarmed air detectors. Patient: Inkster.

- August 29, 2008 insufficient staff to patient ratio.

- September 5, 2008 insufficient staff to patient ratio with just four staff members this day total staff never exceeds five for the day. Total needed is at least six to run unit legally.

- September 29, 2008 insufficient RN to patient ratio. One RN to 15 patients from 05:00 to 06:00 hours.

---

[2] While technically there were three RNs this day two were only there for the first day and were not providing patient services as they were awaiting orientation.

- October 1, 2008 unarmed air detector for entire treatments for patients Mclendez and Vann.

- October 17 unlicensed personnel administering medications.

- October 22, 24, 27, 29, 2008 inservices for staff creating insufficient staff to patient ratio.

- October 29, 2008 only one RN to 18 patients occurring between 13:15 to 13:35 hours.

- November 7, 2008 insufficient staff to patient ratio.

### B. *Improper Use Of Zemplar*

9.    The drug Zemplar is manufactured by Hospira, Inc. for Abbott Laboratories,  a/k/a Paricalcitol, and is a prescription injection which is a metabolically active form of Vitamin D used for the prevention and treatment of secondary hyperparathyroidism associated with chronic kidney disease ("CKD") Stage 5.

10.    Zemplar is available as a sterile, clear, colorless aqueous solution for intravenous injection.  Vials are available in  2 mcg,  5 mcg or 10 mcg vials. Defendant only orders and stocks Zemplar in the 5 mcg vials.  The recommended initial dose of Zemplar is 0.04 mcg/kg to 0.1 mcg/kg administered as a bolus dose no more frequently than every other day and any day during dialysis.  If satisfactory response is not observed the doses may be increased by 2 to 4 mcg at two to four-week intervals.

11.    Zemplar injection as a 2 mcg/ml is under NDC No. 0074-4637-01 and 5 mcg/ml is under (NCD 0074-1658-01 and NDC 0074-1658-02).

12.    It is clinically recommended and directed by the manufacturer and Food and Drug Administration ("FDA") that unused portions of each vial should be discarded and not used a second time even if there is part of the drug left unused in the vial.

13.    Zemplar is distributed in a single dose Fliptop Vial in a single dose container.

Single dose containers such as used for Zemplar for injectable medications hold sterile drug intended for parenteral administration as a single dose, which, once opened, cannot be resealed with the sterility being maintained. *Packaging, labeling and storage of injections. In Allen LV Jr, Popovich NG, Ansel HC, eds. Ansel's Phamarceutical Dosage Forms and Delivery Systems. 8th ed. Baltimore, MD: Lippencott Wlliams & Wilkins; 2005: 468.*

### V. The False Claims Submitted By Defendant.

### Count I - The Federal False Claims Act

### A. Defendant Falsely Certifies That It Is In Compliance With State Regulations Regarding Quality Of Care

14.    Prior to the enactment of the Fraud Enforcement and Recovery Act ("FERA")[3] Title 31 of the United States Code, section 3729(a), in defining what constitutes a "false claim", provided that a person is guilty of making a false claim who:

(2)    knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

15.    Defendant submits false claims on which payment is based and conditioned by failing to adhere to the requirements of federal and state law and violation of public policy concerning the public health, safety or welfare and staffing requirements set forth in Title 8:43A-24.7©) which states that at least one registered nurse shall be on duty for the first nine patients receiving dialysis services on the premises and an additional registered nurse shall be on duty for each additional nine patients or any portion thereof and Subparagraph d of Title 8:43A-24.7 states that at least one registered nurse, licensed practical nurse or trained patient care technician shall be on duty for every three patients receiving dialysis services.

16.    The submission of false information regarding the type of care that was provided,

---

[3] FERA was enacted into law on signed by the President on May 20, 2009

and by whom and whether it was performed by an authorized person directly impacts the type and amount of the payment. Defendant represents that it is in compliance with State regulations regarding quality of care and staffing as described above, which is, both expressly and by implication, a condition of payment by the Federal Payors. Each claim that Defendant submits for payment contains an express certification that Defendant is in compliance with all Federal and State Regulations related to the operational requirements set forth by the appropriate regulatory authorities, including, inter alia, the regulations set forth above .

### B. Defendant Falsely Submits Claims For Reimbursement For Zemplar That It Is Not Using In Violation Of Clinical Guidelines

17.     Prior to the enactment of FERA, Title 31 of the United States Code, section 3729(a) in defining what constitutes a "false claim" provided that a person is guilty of making a false claim who:

(1)     knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

Defendant submits false claims for reimbursement by submitting claims for payment for Zemplar to the United States Government based on its full use each vial of the drug even though it uses the "unused portions" of vials that are not fully drawn or needed based on particular patient prescriptions as described below.

18.     While the dosage of Zemplar comes in vials that contain 2 mcg, 5 mcg and 10 mcg, the Defendant only purchases and uses 5 mcg vials. Based on the prescribed use in the facility in which Relator worked in Sewell, New Jersey known as the Renal Center of Sewell, New Jersey ("Sewell Center") as set forth below, Defendant should be using 50 vials per day.

19.     The inventory log sheets maintained by the Defendants for the period of October 2008 show a range of 29 to 35 vials used per day, when based on patients prescription for October

-9-

29 and October 31 indicated that 50 would be used if the defendant were following the prescribed clinical guidelines of not using "unused" portions from a vial that was already used.

20.     Relator believes that Defendant is submitting claims for reimbursement to Federal payors such as Medicare and Medicaid for what they should or could be using as opposed to what they are actually using, so essentially billing for up to 50 per day when they are only using 29-35 per day.

21.     As described in the chart below, 170 mcg were prescribed for each of the days in question and 30 vials were used per the log. This represents an average discrepancy of approximately 20 vials per day between what was used and what should have been used if the clinical guidelines were followed as described on the charts below in the following paragraph. Fifty vials should have been used, while only thirty were.

22.     Given that Zemplar is prescribed for every other day use, this represents, based on a thirty day month, approximately 300 vial discrepancy a month based on the Sewell Center's population. It is believed that a two week supply of 5 mcg Zemplar vials (7 vials is approximately $400.00 dollars or about $55.00 per vial. The 300 vial discrepancy is based on 15 days of use each month with approximately 20 (50-30) billed for but unused.

Based on the foregoing, RVM submits false claims for 5mcg vials or kits of about 300 per month or over/$16,500 per month in the Sewell Center alone.  RVM acknowledges and even promotes the fact that it is responsible for all management, and training, including the acquisition of all equipment, technology, supplies, employee benefits and administrative services, including all back-office operations, which include all billing and collection functions.

-10-

## Summary Of Zemplar Use Compared to Amount Prescribed

| Name of Patient | Prescribed Dosage of Zemplar | Zemplar Used on October 29, 2008 | Zemplar Used on October 31, 2008 | Zemplar Used on November 5, 2008 | Amount of Zemplar vials that should have been used in one day based solely on use of 5 mcg vials |
|---|---|---|---|---|---|
| ███ | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 2 |
| ███ | 8 MCG | 8 MCG | 8 MCG | 8 MCG | 2 |
| ███ | 3 MCG | 3 MCG | 3 MCG | 3 MCG | 1 |
| ███ | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 1 |
| ███ | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 2 |
| ███ | 1 MCG | 1 MCG | 1 MCG | 1 MCG | 1 |
| ███ | 9 MCG | 9 MCG | 9 MCG | 9 MCG | 2 |
| ███ | 1 MCG | 1 MCG | 1 MCG | 1 MCG | 1 |
| ███ | 3 MCG | 3 MCG | 3 MCG | 3 MCG | 1 |

| | 3 MCG | 3 MCG | 3 MCG | 3 MCG | 1 |
| --- | --- | --- | --- | --- | --- |
| | 4 MCG | 4 MCG | 4 MCG | 4 MCG | 1 |
| | 5 MCG | 5 MCG | 5 MCG | 5 MCG | 1 |
| | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 2 |
| | 3 MCG | 3 MCG | 3 MCG | 3 MCG | 1 |
| | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 2 |
| | 1.5 MCG | 1.5 MCG | 1.5 MCG | 1.5 MCG | 1 |
| | 2.5 MCG | 2.5 MCG | 2.5 MCG | 2.5 MCG | 1 |
| | 9 MCG | 9 MCG | 9 MCG | 9 MCG | 2 |
| | 1 MCG | 1 MCG | 1 MCG | 1 MCG | 1 |
| | 4 MCG | 4 MCG | 4 MCG | 4 MCG | 1 |
| | 3 MCG | 3 MCG | 3 MCG | 3 MCG | 1 |
| | 4 MCG | 4 MCG | 4 MCG | 4 MCG | 1 |

| | | | | | |
|---|---|---|---|---|---|
| | **3 MCG** | **3 MCG** | **3 MCG** | **3 MCG** | 1 |
| | **3 MCG** | **3 MCG** | **3 MCG** | **3 MCG** | 1 |
| | 2 MCG | 2 MCG | 2 MCG | 2 MCG | 1 |
| | 2 MCG | 2 MCG | 2 MCG | 2 MCG | 1 |
| | 4 MCG | 4 MCG | 4 MCG | 4 MCG | 1 |
| | 5 MCG | 5 MCG | 5 MCG | 5 MCG | 1 |
| | 8 MCG | 8 MCG | 8 MCG | 8 MCG | 2 |
| | 1 MCG | 1 MCG | 1 MCG | 1 MCG | 1 |
| | 3 MCG | 3 MCG | 3 MCG | 3 MCG | 1 |
| | 5 MCG | 5 MCG | 5 MCG | 5 MCG | 1 |
| | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 2 |
| | 2 MCG | 2 MCG | 2 MCG | 2 MCG | 1 |
| | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 2 |

| | | | | | |
|---|---|---|---|---|---|
| ■ | 2 MCG | 2 MCG | 2 MCG | 2 MCG | 1 |
| ■ | **3 MCG** | **3 MCG** | **3 MCG** | **3 MCG** | 1 |
| ■ | 6 MCG | 6 MCG | 6 MCG | 6 MCG | 2 |
| ■ | 9 MCG | 9 MCG | 9 MCG | 9 MCG | 2 |
| ■ | 5 MCG | 5 MCG | 5 MCG | 5 MCG | 1 |
| TOTAL ZEMPLAR PRESCRIBED | 170 | 170 | 170 | 170 | 50 |
| TOTAL ZEMPLAR VIALS USED PER DAILY LOG SHEET | | 30 | No record | No record | |

23.    ESRD is a primary medicare benefit. In the event that there are dual eligible medicare and medicaid beneficiaries, medicare is the primary payor. Medicare has $250.00 deductible. Co-pays from the patient can amount to $160.00 dollars. Medicaid would reimburse for these co-pays. Defendant treats patients who are eligible for Medicare and Medicaid and routinely submits claims for payment to them, including these patients identified and listed in paragraph 22.

24.    Defendant submits claims for payment for Zemplar to the United States Government based on its use as if it was using and dispensing Zemplar as it is prescribed and directed by the manufacturer, even though it uses and dispenses the "unused portions" of vials that are not fully drawn or needed based on particular patient prescriptions.

-14-

**WHEREFORE**, Plaintiff requests that the Court enter an award in favor of Plaintiff and against the Defendant for all sums authorized under and pursuant to 31 U.S.C. 3729(a).

### C. Re-use of Single dose Zemplar Containers Designed As An Injectable Medications Corrupts The Sterility of the Medication Being Maintained

25.    Prior to enactment of FERA, Title 31 of the United States Code, section 3729(a) provides that any person who:

(2)    knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

26.    Defendant's re-use of single dose Zemplar containers for injectable medications violates the quality of care standards that Defendant represents and certifies that it provides, both in an implied and express manner, in that the containers are designed to maintain the sterility of the drug and are only intended for parenteral administration as a single dose, which, once opened, cannot be resealed without the sterility being corrupted or /and infected with bacteria. (hereinafter "Quality of Care Use Drug Use Standards"). Defendants implied and express representations are material conditions to the Government's decision to reimburse or pay for the Zemplar is based on the certification that Defendants is in compliance and administers Zemplar consistent and in accordance with the Quality of Care Drug Use Standards which are designed for the safety and health of the beneficiaries of the payment or reimbursement.

**WHEREFORE**, Plaintiff requests that the Court enter an award in favor of Plaintiff and against the Defendant for all sums authorized under and pursuant to 31 U.S.C. 3729(a).

### D. FERA Amendments To The FCA

27.    With the enactment of FERA on May 20, 2009, Section 3729(a) of title 31, United States Code, was amended in the following manner

""(a) LIABILITY FOR CERTAIN ACTS.—

"(1) IN GENERAL.—Subject to paragraph (2), any person who—

-15-

********

"(B) *knowingly* makes, uses, or causes to be made or used, a false record or statement *material* to a false or fraudulent *claim;* [emphasis added]. The effective date of this section is June 7, 2008 and applies to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date.

********

"(b)   DEFINITIONS.—For purposes of this section—

********

(1)   the terms "knowing" and "knowingly" (A) mean that a person, with respect to the information (A) (i) has actual knowledge; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) requires no specific intent to defraud.

(2)   the term "claim" (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or **(ii) is made to a contractor, grantee or other recipient if the** *money or property is to be spent or used on the government's behalf in order to advance a government program or interest, and if the United States government* **(I) provides or has provided any portion of the money or property requested or demanded** or (II) or reimburses contractor, grantee or other recipient for any portion of the money or property which was requested or demanded; and (B) does not include requests or demands for money or property that the government has paid to an individual as compensation for federal employment or as an income subsidy with no restrictions on that individual's use of the money or property [emphasis added]

*******

"(4) the term 'material' means having a *natural tendency to influence, or be capable of*

-16-

*influencing, the payment or receipt of money or property.''*....[emphasis added]

\*\*\*\*\*\*

(f) EFFECTIVE DATE AND APPLICATION.—The amendments made by this section shall take effect on the date of enactment of this Act and shall apply to conduct on or after the date of enactment, except that— (1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date in the manner or degree required that under existing case law at the time.

28.    As defined under FERA, Defendant *knowingly make, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim*;

29.    Defendant submitted "claims" now defined to mean any request that

.....*(ii) is made to a contractor, grantee or other recipient if the money or property is <u>to be spent or used on the government's behalf in order to advance a government program or interest,</u> and if the United States government (I) provides or has provided any portion of the money or property requested or demanded.*

30.    Defendant submitted false or fraudulent statements or records that were termed 'material', now defined as meaning or having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. Specifically, the submission of false information regarding the type of care that was provided, and by whom and whether it was performed by an authorized person directly impacts the type and amount of the payment. Defendant represents that it is in compliance with State regulations regarding quality of care and staffing as described above, which is, both expressly and implied, a condition of payment by the Federal Payors, and which statements and representations would be material as defined under FERA.

31.    The Government funds were spent or used on the government's behalf in order to

advance a government program or interest.

32. The false statements or records made by Defendant in connection with their claim had a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

## Count II

### Foglia, ex rel. the State of New Jersey pursuant to
### The New Jersey False Claims Act v. RVM

33. The allegations of paragraph 1 through 32 are incorporated herein by reference as if set forth at length.

34. RVM maintains, operates and manages nine (9) Centers in the States of New Jersey as described herein. RVM is responsible for all management, and training, including the acquisition of all equipment, technology, supplies, employee benefits and administrative services, including all back-office operations, which include all billing and collection functions, including the Centers in New Jersey.

35. RVM's actions constituted the making of false claims to the State of New Jersey and a violation of the New Jersey False Claims Act in that RVM services patients in their centers in New Jersey who are beneficiaries of Medicaid and/or other programs in which the State is a payor.

**WHEREFORE**, Plaintiff requests that the Court enter an award in favor of Plaintiff and against the United Defendants for all sums authorized under and pursuant to the New Jersey False Claims Act.

## Count III

### Foglia, ex rel. the State of Texas pursuant to
### TEX. HUM. RES. CODE Sec. 36.001-36.117 v. RVM

36. The allegations of paragraph 1 through 35 are incorporated herein by reference as

-18-

if set forth at length.

37.     RVM maintains, operates and manages ten (10) Centers in the States of Texas as described herein RVM is responsible for all management, and training, including the acquisition of all equipment, technology, supplies, employee benefits and administrative services, including all back-office operations, which include all billing and collection functions

38.     RVM's actions constitutes the making of false claims to the State of Texas and a violation of the State of Texas pursuant to TEX. HUM. RES. CODE Sec. 36.001-36.117 in that RVM services patients in their centers in Texas who are beneficiaries of Medicaid and/or other programs in which the State is a payor.

**WHEREFORE**, Plaintiff requests that the Court enter an award in favor of Plaintiff and against the United Defendants for all sums authorized under and pursuant to TEX. HUM. RES. CODE Sec. 36.001-36.117.

### Count IV Foglia, individually v. Defendant
### Conscientious Employee Protection Act

39.     The allegations of paragraph 1 through 38 are incorporated herein by reference as if set forth at length.

40.     Plaintiff continuously objected to his supervisors regrading the practices described herein. At the time of his objections, plaintiff reasonably believed that Defendants failure to adhere to the requirements of federal and state law were in violation of the law and were in violation of public policy concerning the public health, safety or welfare.

41.     Plaintiff's termination was in violation of the Conscientious Employment Protection Act, N.J.S.A. 34:19-1 et seq ("CEPA").

42.     Defendants satisfy the definition of "Employer" under CEPA.

43.     Plaintiff satisfies the definition of "Employee" under CEPA.

44.     Plaintiff had a reasonable and good faith belief that allowing failing to provide

-19-

adequate staffing in violation of the NJAC Regulations.

45.     Plaintiff objected and complained regarding the foregoing which Plaintiff reasonably believed to be a violation of New Jersey laws, rules and regulations.

46.     Plaintiff's concerns, objections and complaints were ignored.

47.     On or about November 7, 2008 Plaintiff was terminated under the pretextual reason of unprofessional conduct.

48.     Plaintiff's disclosures to supervisory personnel and his objections and complaints to his supervisors, as well as his refusal to participate in the activities, policies or practices of Defendant which they felt were fraudulent and violative of law and/or criminal were protected pursuant to the provisions of N.J.S.A. 34:19-3(a) and (c)(1), (2) and (3).

49.     The actions of Defendant in terminating the employment of Plaintiff and otherwise adversely affecting Plaintiff employment as set fort herein were in retaliation for Plaintiff's complaints and objections and/or refusal to participate in activities, polices and practices of Defendant which Plaintiff reasonably believed to be fraudulent and violative of law and/or criminal, which have been set forth at length herein.

50.     As a direct proximate result of the improper and illegal conduct of Defendant, Plaintiff has sustained severe emotional distress, bodily injury, has undergone and will continue to undergo great pain and suffering, has been unable to attend to his usual and customary activities, has experienced a loss of self esteem, has experienced a loss of the enjoyments of life, has lost his income and other personal financial needs and has suffered numerous other economic and non-economic damages and injuries.

**WHEREFORE,** Plaintiff demands judgment for compensatory damages, punitive damages, attorney fees, costs of suit and such other relief as this Court may deem equitable and just.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

a)      compensatory damages, including "front" pay and "back pay,

b)    punitive damages,

c)    attorney's fees,

d)    cost of suit,

e)    interest, and

f)    such other relief as the Court may deem just and equitable.

**BEGELMAN, ORLOW & MELLETZ**

DATED: 12-21-09                          BY:  _____

                                         Ross Begelman, Esquire
                                         Attorneys for Plaintiff